### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
LUIS G. LUNA                 :    Civil No. 3:14CV00145 (HBF)
                             :
v.                           :
                             :
CAROLYN W. COLVIN, ACTING    :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :    August 17, 2016
                             :
-----------------------------x
```

### <u>RULING ON CROSS MOTIONS</u>

Plaintiff Luis G. Luna brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI) under Title XVI of the Social Security Act, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner and Order for Remand [**Doc. #14**] is **GRANTED.** Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #15**] is **DENIED.**

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed an application for SSI on July 9, 2010, alleging disability as of August 14, 2001. [Certified Transcript of the

1

Record, Compiled on April 15, 2014, Doc. #9 (hereinafter "Tr.")
282]. Plaintiff alleged disability due to: trauma from a car
accident, loss of memory, depression, a heart condition, metal
in right hand, respiratory problems, and water in the lungs.
[Tr. 301]. His SSI claim was denied initially on October 19,
2010, and upon reconsideration on November 18, 2010. [Tr. 94,
115].  Plaintiff timely requested a hearing before an
Administrative Law Judge ("ALJ") on December 18, 2010. [Tr.
133].

On August 2, 2012, Administrative Law Judge James E. Thomas
held a hearing at which plaintiff appeared with an attorney and
testified. [Tr. 66-93]. Vocational expert ("VE") Renee B. Jubrey
also appeared and testified Id. On October 15, 2012, the ALJ
found that plaintiff was not disabled, and denied his claim.
[Tr. 16-26]. Plaintiff filed a timely request for review of the
hearing decision on October 22, 2012. [Tr. 58]. On November 26,
2013, the Appeals Council denied review, thereby rendering ALJ
Thomas's decision the final decision of the Commissioner. [Tr.
1-4]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action
for review and moves to reverse the Commissioner's decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination
involves two levels of inquiry. First, the Court must decide

2

whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

3

according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alteration added) (citation omitted). The ALJ is free to accept
or reject the testimony of any witness, but a "finding that the
witness is not credible must nevertheless be set forth with
sufficient specificity to permit intelligible plenary review of
the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,
260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that
finding." Johnston v. Colvin, Civil Action No. 3:13-CV-
00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014)
(internal citations omitted).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

2012) (citations and internal quotation marks omitted).
"[W]hether there is substantial evidence supporting the
appellant's view is not the question here; rather, we must
decide whether substantial evidence supports the ALJ's
decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d
Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore
entitled to benefits, Mr. Luna must demonstrate that he is
unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(requiring that
the impairment "significantly limit [ ] ... physical or mental
ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if

a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the

Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely
> on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If
> the claimant has such an impairment, the Secretary
> will consider him disabled without considering
> vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who
> is afflicted with a "listed" impairment is unable to
> perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual
> functional capacity to perform his past work. Finally,
> if the claimant is unable to perform his past work,
> the Secretary then determines whether there is other
> work which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

    "In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

    Following the above-described five step evaluation process, ALJ Thomas concluded that plaintiff was not disabled under the Social Security Act. [Tr. 16-26]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity

since July 9, 2010, the application date.[1]  [Tr. 18].

At step two, the ALJ found that plaintiff had an affective disorder and an anxiety disorder that were severe impairments under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 20]. The ALJ specifically considered Listings 12.04 (affective disorder) and 12.06 (anxiety disorders).  Id.  The ALJ also conducted a psychiatric review technique and found that plaintiff had a mild restriction in activities of daily living and moderate difficulties in social functioning, concentration, persistence or pace. Id. The ALJ found no episodes of decompensation. Id. at 20-21.

Before moving on to step four, the ALJ found plaintiff had the RFC to perform light work with the following exertional limitations:

> The claimant can perform unskilled work of 2-3 discrete steps, with attention span to perform simple work tasks for 2-hour intervals throughout an 8-hour workday. He cannot tolerate interaction with the public, high-paced production demands, or strict adherence to timed production. He also needs reminders of tasks twice a day when learning new tasks.

[Tr. 21].

---

[1] SSI benefits are not payable for any period prior to the month after the application is filed. See 42 U.S.C. §1382(c)7); 20 C.F.R. §§416.335, 416.501

At step four, the ALJ found plaintiff unable to perform his past relevant work as an auto mechanic helper/tire repairer. [Tr. 24]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. Id.

## V.   DISCUSSION

On appeal, plaintiff argues that the ALJ erred in his evaluation of the opinion evidence of plaintiff's treating psychiatrist Dr. Maria DaCosta and therapist Hector M. Figueroa-Cruz, a licensed clinical social worker (LCSW). [Doc. #14-1 at 24-33; Tr. 23-24; 387-90 (Mental Impairment Questionnaire dated November 2, 2010); 350-54 (Mental Impairment Questionnaire dated August 5, 2010); 718-19 (Medical Opinion Re: Ability to do Work-Related Activities (Mental) dated August 6, 2012)].

The ALJ found, in part:

> The assessments of Hector M. Figueroa-Cruz, LCSW (Exs. 3F, 6F, 17F), the claimant's therapist are each given little weight. Although Mr. Figueroa-Cruz is a treating source, and his opinions are co-signed by acceptable medical sources, the assessments are inconsistent with the evidence including the treatment notes (Exs. 3F, 6F, 7F, 8F, 9F, 10F, 11F), and the findings of the consultative examiner (Ex. 4F). For example, the therapist assesses multiple times that the claimant generally has significant problems with following even simple instructions. However, the notes indicate that the claimant generally has intact cognition, coherent thought process, and at least "fair" judgment and insight. Moreover, the consultative examiner's mental status examination

found that the claimant had a 6-digit forward memory
span and was able to recall 3 out of 3 objects after 3
minutes (Ex. 4F). Additionally, the therapist made
multiple assessments that the claimant would have
serious problems interacting appropriately with
others. However, the claimant has always been found to
be cooperative with his treating sources (Exs. 3F, 6F,
7F, 8F, 9F, 10F, 11F). Moreover, the claimant admits
that he has no problems getting along with other
including authority figures. (Ex. 2E). Finally the
degrees of limitation generally found in the
assessments are inconsistent with the assessed GAF
scores, which were in the 50s range, indicating only
moderate difficulties (Exs. 3F, 6F, 7F, 9F, 11F).

[Tr. 23-24].

Pursuant to 20 C.F.R. §404.1527(c)(2), a treating source's
opinion will usually be given more weight than a non-treating
source. If it is determined that a treating source's opinion on
the nature and severity of a plaintiff's impairment is "well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in [the] case record," the opinion is given
controlling weight. 20 C.F.R. §404.1527(c)(2). If the opinion,
however, is not "well-supported" by "medically acceptable"
clinical and laboratory diagnostic techniques, then the opinion
cannot be entitled to controlling weight. Id.

Here, the ALJ assigned "little weight" to the November 2,
2010 opinion signed by LCSW Figueroa-Cruz, as well as to the
August 5, 2010 and August 6, 2012 opinions signed by both LCSW
Figueroa-Cruz and Dr. DaCosta, finding they were inconsistent

with the medical evidence of record including the treatment notes. [Tr. 23-24; 350-54; 387-90; 718-19]. In each of the three opinions, plaintiff's mental health providers opined that he had "serious" to "extreme" functioning limitations.

On August 5, 2010, LCSW Figueroa-Cruz and Dr. DaCosta opined that plaintiff had an "very serious" problem using appropriate coping skills to meet ordinary demands of a work environment and performing work activity on a sustained basis; a "serious problem" using good judgment regarding safety and dangerous circumstances, handing frustration appropriately, interacting appropriately with others in a work environment, carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks, changing from one simple task to another, and performing basic work activities at a reasonable pace/finishing on time; and an "obvious problem" caring for physical needs, asking questions or requesting assistance, and carrying out single-step instructions. [Tr. 352-53]. They added in handwritten comments that plaintiff's "current sxs impair his ability to perform[] work activity on a sustained basis." [Tr. 353].

On November 2, 2010, LCSW Figueroa-Cruz opined plaintiff would have a "very serious" problem using appropriate coping skills to meet ordinary demands of a work environment, interacting appropriately with others in a work environment,

carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks and performing work activity on a sustained basis (i.e. 8 hrs. per day, 5 days a week); a "serious problem" interacting appropriately with others in a work environment, carrying out single-step instructions, changing from one simple task to another, and performing basic work activities at a reasonable pace/finishing on time. [Tr. 388-89]. The therapist added that plaintiff had impaired memory and concentration, anxiety and depression and current symptoms that "affect his ability to perform work activity on a sustained basis." [Tr. 387-89].

On August 6, 2012, LCSW Figueroa-Cruz and Dr. DaCosta opined that plaintiff had "no useful ability" remembering work-like procedures, performing at a consistent pace without an unreasonable number and length of rest periods, concentrating, understanding and remembering detailed instructions, and traveling in unfamiliar places;[2] an "[inability] to meet competitive standards" understanding, remembering and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruption from psychologically based

---

[2] "No useful ability to function" means that the claimant has "an extreme limitation, means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting." "41+% limited." [Tr. 718].

symptoms, responding appropriately to changes in a routine work setting, being aware of normal hazards and taking appropriate precautions, and setting realistic goals or making plans independently of others;[3] "seriously limited" ability to maintain attention for a two hour segment, maintain regular attendance and be punctual within customary, usually strict tolerances, and working in coordination with or proximity to others without being unduly distracted.[4] [Tr. 718-19].  They added a handwritten comment that plaintiff "presents [with] impaired memory [and] concentration, sadness and anxiety episodes. Client shows little improve[ment] regarding his ability to concentrate and his memory. Pt. has a hx of TBI." [Tr. 719].

An "ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion," including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors

---

[3] "Unable to meet competitive standards" means that the claimant has a "noticeable difficulty (e.g. distracted from job activity) from 21 to 40% of the workday or work week." [Tr. 718].
[4] "Seriously limited" means that the claimant has a "noticeable difficulty (e.g. distracted from job activity) from 11 to 20 percent of the workday or work week. (15% of a work day equals 72 mins/day). Id.

brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see 20 C.F.R. §404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "Generally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion," 20 C.F.R. §404.1527(d)(2)(i).

"The ALJ is not required to explicitly discuss the factors, but it must be clear from the decision that the proper analysis was undertaken." Khan v. Astrue, No. 11-CV-5118(MKB), 2013 WL 3938242, at *15 (E.D.N.Y. July 30, 2013) (citing Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (internal alteration and citation omitted). "[F]ailure to provide good reasons for

not crediting the opinion of a claimant's treating physician is a ground for remand." Sanders v. Comm'r of Soc. Sec.*,* 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) (citation omitted); see also Halloran*,* 362 F.3d at 32-33; Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

The Court reverses and remands for further consideration because it is not clear from the ALJ's decision that the substance of the treating physician rule was properly applied in determining the weight assigned to the opinions of Dr. DaCosta. With regard to the first factor, the record establishes a long and frequent treating history. Dr. DaCosta began treating plaintiff in April 2010. She prepared four treatment plans with LCSW Figueroa-Cruz, [Tr. 395-96 (4/13/10); 393-94 (7/8/10); 443-44 (12/6/10); 659-60 (4/24/12) and provided medication management approximately thirteen times between May 2010 and July 2012. [Tr. 361-62; 363-64; 400-01; 402-03; 406-07; 409-10; 413-14; 513-14; 555; 554; 667-68; 665-66; 661-62]. LCSW Figueroa-Cruz provided therapy from April 2010 through July 2012, both individually and in group therapy settings and as an outpatient and in intensive outpatient care.[5] Indeed, from

_____

[5] See e.g. Tr. 373-379; 415-16; 418; 425-35; 438; 456; 460-61; 467-75; 478; 480-81; 488-495; 538-40; 542-49; 556-77, 559, 561-

December 2010 through February 2011, plaintiff was attending
intensive outpatient therapy approximately three times a week
for three hours a day.[6] [Tr. 434-36; 430-32; 428-29; 425-27; 494-
95; 491-43; 488-90; 478; 480-81 (2010); 456, 460-61; 467-69;
470-472; 473-75; 538-40; 542-43; 544-46; 547-49; 594-96; 591-93;
588-590; 582-84; 579-81; 576-78; 572, 574-75; 570-71, 573; 566-
69; 563-65 (2011)].

With regard to the second and third factors, as set forth
above, the record contains a significant treatment record with
treatment plans from April 2010 through July 2012 and Dr.
DaCosta's opinion is consistent with her treatment notes and
treatment plans. Further, her treatment notes were consistent
with two other treating psychiatrists, Dr. Mihal Caratas [Tr.
391-92; 359-60; 404-05; 673-74] and Dr. Tulabarrian [Tr. 365-
68]. Although the ALJ states that LCSW Figueroa-Cruz's
"assessment[s] are inconsistent with the evidence including the
treatment notes" [Tr. 23], the ALJ provides only two examples.
ALJ Thomas noted that the evidence and treatment notes do not
support a finding that plaintiff has a "significant problem"
following even simple instructions or a "serious problem"

---

84; 588-96; 646; 603-06; 609-12; 614; 617; 619; 622-28; 630;
632; 634-38; 640; 642-44; 646; 650-51; 653-57].
[6] Group counseling was also provided by therapist Luisa Leon-
Lebron, a licensed clinical social worker. [Tr. 425; 427; 430;
459-60; 467-68; 471-75; 499; 539-40; 542-43; 545-47; 564-66;
573-75; 578, 581-82; 589-92; 594].

interacting appropriately with others. However, the treatment
plans consistently reference a diagnosis of major depressive
disorder without psychotic features with symptoms characterized
by depression, anxiety, fear, difficulty sleeping, sadness
episodes, crying spells, isolation and severe memory and
concentration problems. [Tr. 395-96 (4/13/10); 393-94 (7/8/10);
391-92 (10/7/10); 443-44 (12/6/10); 659-60 (4/24/12)]. Indeed,
in the most recent treatment plan, dated April 24, 2012, Dr.
DaCosta and LCSW Figueroa-Cruz stated that plaintiff's
"depressed mood, [increased] anxiety, [decreased] memory,
[decreased] concentration ... impair client's overall
functioning." [Tr. 659]. Goals and objectives set were
"[S]tabilization of psychiatric [symptoms] as shown by 1.
Decreased [symptoms]. Increase ability to cope [with symptoms]
so that pt.'s functioning is not impaired." Id. The treatment
records prepared by Dr. DaCosta reflect similar psychiatric
symptoms. See e.g., Tr. 361-62; 406-07; 409-10; 409-10; 513-14;
555; 667-68; 665-66; 661-62. On July 9, 2012, the most recent
treatment record, Dr. DaCosta noted that plaintiff complained of
problems with concentration and memory and she prescribed
Adderall to address plaintiff's problems with concentration.
[Tr. 661-62].  Although LCSW Figueroa-Cruz is not a treating
source under the regulations, the longitudinal treatment record
also reflect plaintiff's ongoing symptoms and diagnosis of

severe depression and anxiety and provides further insight into plaintiff's response to treatment and further support for the opinions in the record. 20 C.F.R. §404.1513. This is also demonstrated in LCSW Leon-Lebron's treatment records. Indeed, the evidence of record is remarkable due to the consistency of treatment and the number of mental health treatment records from both the treating psychiatrist and social worker for over a two year period. Burgess, 537 F.3d at 129 (noting that "[g]enerally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion")(quoting 20 C.F.R. §404.1527(d)(2)(i)).

With regard to the fourth factor, Dr. DaCosta is a psychiatrist and Mr. Figueroa-Cruz is a licensed social worker; both specialize in providing mental health treatment. The Court notes that psychiatrists Caratas and Tulabarrian also provided treatment to plaintiff. Plaintiff accurately points out that the ALJ failed to identify his treating psychiatrist Dr. DaCosta by name, simply referring to the opinions as "co-signed by acceptable medical sources" [Tr. 23], and failed to mention the content of her opinions or the breadth of her treatment. Indeed, Dr. DaCosta was still treating plaintiff through the date of the hearing. [Tr. 718-19].

Significantly, Dr. DaCosta's opinion dated August 6, 2012, found that plaintiff was either "seriously limited," "unable to meet competitive standards" or had "no useful ability to function" in twenty of the twenty-five work-related assessments she was asked to consider. [Tr. 718-19]. As set forth in the opinion, "seriously limited" means a noticeable difficulty 11 to 20 percent of the workday/work week; "unable to meet competitive standards" means a noticeable difficulty from 21 to 40 percent of the workday/work week and "no useful ability to function" means the "patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting" or 40 percent "plus" limited. [Tr. 718]. Dr. DaCosta added a handwritten comment that "client presents [with] impaired memory [and] concentration, sadness and anxiety episodes. Client shows little improve[ment] regarding his ability to concentrate and his memory. Pt. has a hx of TBI." [Tr. 719].  The doctor opined that plaintiff would be absent from work about four days a month. Id. At the hearing before the ALJ, the VE testified that if a hypothetical individual were off task 11 percent or more during a workday, he would be unemployable at the unskilled level. [Tr. 90]. Dr. DaCosta's August 2010 and August 2012 opinions described a wide range of functional limitations that severely impacted plaintiff's ability to do work-related activities not addressed by the ALJ in his opinion. Further, the

19

ALJ did not "comprehensively set forth" his reasons for the weight assigned Dr. DaCosta's opinions despite the length of time Dr. DaCosta treated plaintiff. Burgess, 537 F.3d at 129.

As set forth above, this case is remanded to the ALJ to review the record and to set forth the factors considered in weighing the opinion evidence. 20 C.F.R. §404.1527(d). Further, after considering the above factors the ALJ must comprehensively explain his reasons for the weight assigned to Dr. DaCosta's opinions. Burgess, 537 F.3d at 129 ("After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.") (emphasis added, internal alteration and citation omitted). "Failure to provide such "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Id. 537 F.3d at 129-30 (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted).

**VI.   CONCLUSION**

For the reasons stated, plaintiff's Motion for Order Reversing the Decision of the Commissioner and Order for Remand [**Doc. #14**] is **GRANTED**. This case is remanded for further proceedings consistent with this opinion. Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #15**] is **DENIED**.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [doc. #23] on January 6, 2016, with appeal to the Court of Appeals.  Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport this 17th day of August 2016.

          /s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE